LARS AMUNDSON v. JOHN O. SCHJAASTAD and Others.[1]

May 19, 1897.

Nos. 10,565—(76).

**Action on Note—Release of Sureties—Evidence—Grant of New Trial.**

Evidence considered, and *held*, that it is not so manifestly and palpably in favor of the verdict as to justify the setting aside of the trial court's order granting a new trial.

Appeal by defendants Vinkjer from an order of the district court for Douglas county, Baxter, J., granting a new trial, after a verdict in their favor. Affirmed.

*C. J. Gunderson,* for appellants.
*Constant & A. T. Larson,* for respondent.

START, C. J. Action upon a promissory note payable to the plaintiff, in which J. O. Schjaastad was principal and Ole T. Vinkjer and Gunder T. Vinkjer were sureties. The sureties answered, alleging that when the note became due, plaintiff, for a valuable consideration, paid by the principal, extended the time of the payment of the note without their knowledge or consent. Verdict for the sureties, and they appeal from an order granting a new trial on plaintiff's motion.

The only question necessary to be considered on this appeal is whether the preponderance of the evidence was so manifestly and palpably in favor of the verdict that it was error for the court to set

---

[1] Reported in 71 N. W. 3.

it aside. Our conclusion from a consideration of the evidence is that it was not. It was conceded by the plaintiff that the appellants were sureties on the note, and that he knew it, but the evidence is far from conclusive that he ever extended the time of the payment of the note. There were but two witnesses on the question, the plaintiff and the principal on the note. It is undisputed that the annual interest on the note was $64, and that on May 16, 1893, no interest had been paid on the note for one and a half years; and, further, that on that day the maker, Schjaastad, came to the plaintiff, and wanted to pay two years' interest on the note; that he did pay at that time $128, and that he did then write on the back of the note the words: "Extension made, and interest paid in advance to Nov. 16, 1893."

The testimony of the plaintiff when called for cross-examination by defendants, tended to show that the time of payment was extended. But, when subsequently called in his own behalf, he gave evidence to the effect that when the $128 was paid to him there was no agreement to extend the time of payment of the note, nor any talk about it; that he told Schjaastad he did not want any money in advance, and directed him to mark on the note how much he paid; and that he did not understand what was written by Schjaastad on the note. The evidence fairly indicates that the plaintiff reads and understands English but imperfectly. Schjaastad testified, in effect, that the appellant Vinkjer gave him the $128, and told him to go and pay two years' interest on the note, and to write thereon the words which we have quoted, and that he did so. On his cross-examination he further testified as follows:

"Q. And you paid for two years? A. Yes, sir. Q. And you told Amundson, didn't you, that that was the interest for two years? A. I don't think there was much talk about that. * * * Q. And you wrote that on the back of the note? A. Yes, sir. Q. Did Amundson tell you to write that on the note? A. Well, he come with the note, and told me to put on the note what I paid. Q. Why didn't you put it on? A. Well, I put it on there. Q. Amundson told you to put it on there? A. He told me to mark it down there. Q. And you marked it down here? A. Yes, sir. Q. He didn't tell you to put down the exact words? A. No, sir; nothing about the words. Q. You made that up by yourself? A. Yes, sir. Q. You wanted the note extended until fall? A. We didn't have any talk about that. Q. You wanted the note extended until November 16th? A. That

seems to be the meaning of it.  Q. And you understood, and Amundson understood, that that note should stand to the fall?  A. I don't know what Amundson understood.  Q. You understood it?  A. I had that in my mind.  Q. (by Mr. Larson). At this time, did you and Amundson agree to any extension of this note?  A. No.  Q. Was there anything said about it?  A. No."

If the plaintiff testified truly when called the last time, his evidence would fairly justify the inference that there was no extension; but that his understanding was that the $128 was to be indorsed on the note, that is, marked on the note, as he expressed it, leaving the law to make the application.  Whether the discrepancy in his testimony was due to craft or ignorance was a matter of which the trial court was the best judge.  It is quite evident that the trial judge was of the opinion that if there was an artfulness in this case, it was not on the part of the plaintiff.

Order affirmed.